UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MONICA B. R.,

               Plaintiff,

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

Case No. 3:25-cv-00221-AR

OPINION AND ORDER

_____

**ARMISTEAD, United States Magistrate Judge**

      Monica B. R. challenges the Commissioner's denial of her supplemental security income

benefits. She argues that the Administrative Law Judge made two reversible errors: (1) failing to

consider whether her asthma met or equaled respiratory Listing 3.02 and finding that it did not

meet or equal Listing 3.03 at step three, and (2) failing to provide clear and convincing reasons

for discounting her subjective symptom testimony. (Pl.'s Br. at 3-21.) Although the court

concludes that the ALJ did not err as to Step Three, the ALJ's findings for discounting plaintiff's

symptom testimony are not supported by substantial evidence. Accordingly, the Commissioner's decision is reversed and remanded for further proceedings. *See* 42 U.S.C. § 405(g); *Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020)* (the district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record).

**(1) Step Three**. At plaintiff's hearing before the ALJ, in which she did not participate, her non-attorney representative argued that even if plaintiff's severe asthma disorder did not meet the listings for "technical reasons" it was nevertheless disabling. (Tr. 46.) The ALJ made the step-three determination that plaintiff's asthma disorder did not meet or medically equal the criteria of Listing 3.03 for asthma, observing that although subparagraph A was met (requiring a minimum FEV1 value), subparagraph B was not (requiring three hospitalizations within a 12-month period and at least 30 days apart). *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (noting that, to meet or equal a listing, a claimant must establish *all* medical criteria of the relevant listing and an "impairment that manifests only some of those criteria, no matter how severely, does not qualify"). Plaintiff contends, raising four arguments, that the ALJ erred in determining that she does not have a respiratory condition severe enough to require a disability finding. 20 C.F.R. § 416.920(d) and *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990) (impairments described in the listing are considered so severe that they are presumed to be disabling and the ALJ has no discretion in awarding benefits).

*Listing 3.02.* Plaintiff argues that the ALJ harmfully erred by omitting any discussion of Listing 3.02. (Pl.'s Br. at 4; Reply at 1-2.) According to plaintiff, because Listing 3.02A may be met with respiratory test results alone and her medical records contained spirometry test results,

Page 2 – OPINION AND ORDER
*Monica B. R. v. Comm'r Soc. Sec. Admin.*, 3:25-cv-00221-AR

the ALJ was required to consider Listing 3.02. Even so, because the spirometry test results on which she relies to argue that the ALJ was required to discuss Listing 3.02 lacked a report, the ALJ did not err.

A claimant can meet Listing 3.02A with spirometry test results showing an FEV1 value less than or equal to the values identified in Table 1 based on age, gender, and height without shoes. 20 C.F.R. § 404, Subpt. P, App. 1 (Listing 3.02A). As relevant here, Listing 3.00E discusses spirometry and identifies the requirements "for an acceptable test and report." *Id.* (Listing 3.00E). Spirometry testing requires that the claimant be medically stable, repeat spirometry testing at times, and that the breathing maneuvers be satisfactorily performed. *Id.* (Listing 3.00E(2)(a)-(c)). Additionally, the spirometry report must include the date of testing, the claimant's gender and height, any factors that could affect the results, and "[l]egible tracings of your forced expiratory maneuvers in a volume-time format showing your name and the date of the test for each maneuver." *Id.* (Listing 3.00E(3)(a)-(c)). Based on plaintiff's age and height, she must have an acceptable test and report showing an FEV1 value less than 1.35L to satisfy Listing 3.02A. *Id.* (Listing 3.02A Table 1-B)).

Plaintiff points to an FEV1 value of 0.94L obtained at a May 3, 2022, appointment with a pulmonologist. (Tr. 1070-74.) Yet the May 2022 spirometry test results are just that—numeric results. (Tr. 1074.) There is no "report" from the pulmonologist showing the "predicted normal value" or whether the maneuver was satisfactorily performed showing "full inspiration" with "a sharp takeoff and rapid rise to peak flow, has a smooth contour, and either lasts for at least 6 seconds or maintains a plateau for at least 1 second" and contains no "legible tracings" of the maneuver "in a volume-time format" as required for an "acceptable test and report." 20 C.F.R. §

Page 3 – OPINION AND ORDER
*Monica B. R. v. Comm'r Soc. Sec. Admin.*, 3:25-cv-00221-AR

404, Subpt. P., App. 1 (Listing 3.00E(2)(b)-(c), (3)(c)). Plaintiff acknowledges that the testing was not performed when she was medically stable and thus is not an acceptable test and report. (Pl.'s Br. at 4 (noting test was not obtained within 30 days of completion of treatment for an acute exacerbation).) And as plaintiff's representative recognized at the hearing and as plaintiff concedes in her reply, the singular, bare numeric spirometry test result in the record fails to satisfy the criteria for meeting Listing 3.02A. (Tr. 46 ("we can't technically use this to meet the listing"); Reply at 3 ("the Listing cannot be *met* with this reading").) Thus, the ALJ did not err in failing to discuss whether plaintiff *met* Listing 3.02A.

As for whether Listing 3.02A was *equaled*, plaintiff also misses the mark. Plaintiff remonstrates that the spirometry test performed in May 2022 was obtained under conditions that were close to satisfying the listing and that the ALJ erred by failing to consider equivalency under Listing 3.02A. Not so. "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013) (quoting *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005)). At the hearing, plaintiff's representative presented no theory to the ALJ as to how her asthma medically equaled Listing 3.02A. (Tr. 46.) Accordingly, the ALJ did not err in failing to discuss if Listing 3.02A was equaled.

*Equivalency under Listings 3.02D and 3.03B*. Plaintiff also argues that the ALJ erred in evaluating whether she equaled Listing 3.02D and 3.03B.[1] (Pl.'s Br. at 4-9.) Those listings are nearly identical. Listing 3.02D requires:

> Exacerbations or complications requiring three hospitalizations within a 12–month period and at least 30 days apart (the 12–month period must occur within the period we are considering in connection with your application or continuing disability review). Each hospitalization must last at least 48 hours, including hours in a hospital emergency department immediately before the hospitalization.

20 C.F.R. § 404, Subpt. P, App. 1 (Listing 3.02D). Listing 3.03B requires the above plus:

> Consider under a disability for 1 year from the discharge date of the last hospitalization; after that, evaluate the residual impairment(s) under 3.03 or another appropriate listing.

*Id.* (Listing 3.03B).

The listings require, in plaintiff's view, spending "about six days in total" in a hospital at any point within a 12-month period. (Pl.'s Br. at 5-6.) According to plaintiff, from July 2021 to April 2022, she was hospitalized for a total of "**7,934 minutes**—or **132.23 hours**, or **5.51** days—in emergency or inpatient care," which is close to the time required under the listings. (Pl.'s Br. at 5-6.) Plaintiff remonstrates that the record contains ample evidence establishing equivalency and that the ALJ erred by failing to properly evaluate it. Plaintiff's argument is misplaced in two ways.

First, the listing criteria require that the hospital visits each last at least 48 hours, and that they be at least 30 days apart. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (Listings 3.02D, 3.03B).

---

[1]    At page 4 of plaintiff's opening brief, she identifies Listing 3.03A, yet the court presumes that she meant 3.03B because she discusses hospitalizations.

Only two of plaintiff's emergency room visits lasted 48 hours and the visits were less than 30 days apart and consequently—as the ALJ found—those treatment notes fail to show that she has "symptoms, signs, and laboratory findings at least equal in severity and duration" to establish equivalency under Listings 3.02D and 3.03B. (Tr. 20 (citing 1107, 1137-38, 1166-68)); *Tackett, 180 F.3d at 1099*. Second, plaintiff did not present her current equivalency theory—that she spent nearly six days total—to the ALJ, and thus the ALJ did not err in failing to consider it. *Kennedy, 738 F.3d at 1178*; *Burch, 400 F.3d at 683*.

*Medical Expert Required.* Plaintiff contends that the ALJ erred in stating that "no acceptable medical source designated to make equivalency findings has concluded that [plaintiff's] impairment medically equals a listed impairment." (Tr. 20.) The ALJ is responsible for making an equivalency finding and *may* consider medical expert testimony, nevertheless plaintiff argues that expert testimony is not *required* for equivalence. *See* 20 C.F.R. § 416.926(e)(3) (providing that at hearings level, "the responsibility for deciding medical equivalence rests with the administrative law judge"). Also asserted by plaintiff is that if expert medical testimony was required, the ALJ erred in failing to obtain such testimony. (Pl.'s Br. at 3, 6-7.) The court disagrees.

At the hearings level, ALJs determine medical equivalence, and they may ask for and consider evidence from medical experts to aid in evaluating the issue. 20 C.F.R.§ 416.926(e)(3) SSR 17-2p, *available at*, 2017 WL 3928306, at *2-3 (effective Mar. 27, 2017). And under SSR 17-2p, to find medical equivalence at step three, the record must contain evidence of (1) a prior administrative medical finding from a medical consultant at the initial or reconsideration levels supporting equivalence; or (2) medical expert evidence obtained at the hearings level supporting

equivalence. *Id.* at *3. Moreover, SSR 17-2p provides that an ALJ is "not require[d]" to obtain expert testimony if the evidence does not support an equivalence finding at step three. *Id.* at *4. In other words, to find that plaintiff's asthma equaled Listing 3.02D or 3.03B, the record must contain expert evidence, such as opinions from agency doctors, plaintiff's doctors, or a testifying medical expert. Conversely, if the ALJ believes that plaintiff can not establish equivalence, the ALJ is not required to call an expert.

Here, the ALJ's statement that the record contained no prior administrative findings or expert evidence stating that plaintiff's asthma equaled a listing is supported by substantial evidence, accurately reflects the requirements of SSR 17-2p, and is free of legal error. Accordingly, the ALJ's finding that Listing 3.03B—the same requirements as Listing 3.02D—do not support an equivalency finding also is supported by substantial evidence and free of legal error. (Tr. 20-21.) The agency physicians at the initial stage and on reconsideration did not find equivalency (Tr. 60, 68), and plaintiff does not identify a physician's opinion with limitations demonstrating equivalency. Thus, plaintiff's contention that her various hospital records establish equivalency falls short. *See Kennedy*, 738 F.3d at 1176 (discussing that listed impairments set strict standards because they end the sequential evaluation).

*Walker and Nebulizer Use as Hearsay.* Plaintiff's representative argued at the hearing that Listing 3.03B is medically equaled because plaintiff has been using her nebulizer every two to three hours and using a walker for asthma flare-ups since being discharged in May 2022. (Tr. 20.) Yet the ALJ discounted the representative's statements as "hearsay," and found that the statements concerning plaintiff's nebulizer and walker use were not supported by objective medical evidence in the record. According to plaintiff, the ALJ should have considered the

Page 7 – OPINION AND ORDER
*Monica B. R. v. Comm'r Soc. Sec. Admin.*, 3:25-cv-00221-AR

representative's statements as an opening statement or offer of proof. She also contends that the record contains evidence of prescriptions for a nebulizer and her significant physical limitations that are relevant to an equivalency finding, and if the ALJ required additional information about plaintiff's walker and nebulizer use, the ALJ had a duty to develop the record. (Pl.'s Br. at 6-9.)

The court agrees with the parties that whether the representative's statements are "hearsay" does not bear on the ALJ's evaluation at step three. *See* 42 U.S.C. § 405(b)(1) (stating rules of evidence are not applicable to social security hearings). But  the ALJ did not err in failing to consider whether her walker and nebulizer use established equivalency at step three.[2] Plaintiff identifies no criteria in the respiratory listings that discuss nebulizers or other prescriptions, and equivalency must be established with medical findings, not functional limitations. *Tackett*, 180 F.3d at 1100 ("Medical equivalence must be based on medical findings. A generalized assertion of functional problems is not enough to establish disability at step three.") (internal citation and quotation omitted). Lastly, plaintiff has not shown that the record was insufficiently developed for the ALJ to make step three findings; the ALJ did not have a duty to develop the record at this step. *Id.*

**(2)** *Subjective Symptom Testimony.* Plaintiff asserts that the ALJ's bases for discounting her subjective symptom testimony about her asthma—treatment noncompliance and prior work history—and about her mental health—improvement with treatment —were unsupported or failed to account for the entire record. (Pl.'s Br. 18.) *See Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015) (if a claimant provides objective medical evidence of an underlying

---

[2]    The ALJ also discussed the representative's testimony and plaintiff's walker and nebulizer use when evaluating the subjective symptom testimony. (Tr. 30.)

impairment and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony); 20 C.F.R. § 414.929.

*Treatment Noncompliance.* The court agrees with plaintiff's contention that the ALJ's grounds for finding that she was noncompliant with her treatment—a pattern of emergency care visits, running out of prescription medication, failing to follow up treatment providers—failed to account for her barriers to treatment. (Pl.'s Br. at 12-17; Tr. 24-30.) From 2021 through 2023, she sought emergency care many times despite taking her prescribed medication as directed. (*See* Tr. 537 ("She used her home inhaler repeatedly without improvement"), 540, 601, 605-06, 618 ("she describes that following her emergency department visit she is feeling better but has had worsening shortness of breath . . . She states her bag was stolen from her car which contain her MDI albuterol inhaler and her prednisone although she did take her dose this morning"), 626-29 ("She has been using her inhalers which has been helping but is not fully relieved her symptoms and she comes in today with worsening shortness of breath"), 878-880, 944.)

Plaintiff's financial circumstances made it difficult to obtain her prescribed treatment. For example, the record shows that plaintiff was often moving, once lived in her car, and had no access to electricity to use her nebulizer. (*See* Tr. 879, 905, 1023 ("unstably housed which complicates [plaintiff's] ability to use Duoneb and stabilize breathing"); 1025 ("[u]nstably housed which makes plugging in neb machine harder"), 1313 (unable to operate her home nebulizer); 1340 ("recently got in a fight with mother and is living in car in Portland area"); 1346-47 ("[h]ousing stability with electrical access is vital to patient's stability of medication use and breathing machine"); *see also* Tr. 905, 1346-48 (discussing hotel stay prescriptions and

requests for flex-pay funding programs to secure housing so that plaintiff would have electricity for nebulizer).)

Despite acknowledging that plaintiff has an "unstable living situation" and is sometimes "homeless and living with her mother" (Tr. 30), the ALJ did not adequately grapple with the effects her circumstances had on treatment compliance. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (finding reversible error where the ALJ discredited the claimant's testimony based on large gaps in his treatment because he did not have insurance and could not pay for it); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (holding that noncompliance "is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment"); *see also* SSR 16-3p, available at 2017 WL 5180304, at *9 (discussing that ALJ must consider reasons for noncompliance, including that a claimant "may not be able to afford treatment and may not have access to free or low-cost medical services"). Thus, the ALJ's findings on treatment noncompliance are not supported by substantial evidence and this rationale fails to provide a clear and convincing basis for discounting plaintiff's testimony.

*Plaintiff's Work History*. The ALJ discounted plaintiff's subjective symptom testimony because she stopped working because the company closed, not because of her asthma. (Tr. 24.) But plaintiff's former employer closed two years before her alleged onset date and, therefore, this rationale fails to provide a clear and convincing basis for discounting her subjective symptom testimony. *See Haagenson v. Colvin*, 656 F. App'x 800, 801 (9th Cir. 2016) (holding that "the evidence that [claimant] was laid off from her last job. . . prior to her alleged onset date . . . has no bearing on either her credibility or the disability determination").

*Improvement With Treatment*. Plaintiff takes issue with ALJ's finding that her mental health symptoms improved with treatment, asserting that the ALJ failed to consider the "overall diagnostic picture." (Pl.'s Br. 17-19, citing *Ghanim v. Colvin*, 763 F.3d 1154, 1161-62 (9th Cir. 2014); Tr. 24-26, 28-29, 31.) For instance, Ativan helps during panic attacks but causes her to become "lethargic and somnolent." (Pl.'s Br. at 18, citing Tr. 654, 656-57.) And medications she was prescribed for her anxiety were ineffective because she was in acute distress during an asthma attack and "remained unable to tolerate the BIPAP mask due to claustrophobia at other visits." (Pl.'s Br. at 18-19.) Here, the court disagrees.

The ALJ reasonably considered that plaintiff's mental impairments responded well to treatment with prescribed medication, relying on a provider's note that described her anxiety as "inactive or stable," her own repeated reports to providers denying depression, and her report to a provider in June 2022 that her medication "helps significantly with anxiety." (Tr. 31, Tr. 1340.) As the ALJ also found, there is an absence of mental health treatment after 2022, plaintiff has not pursued therapy for her mental health symptoms, and medical providers have not assessed limitations due to her mental health. (Tr. 31-32.) *See also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling.") (citations omitted). The ALJ's findings are supported by substantial evidence and are a reasonable interpretation of the evidence. The ALJ therefore did not err in evaluating plaintiff's mental health symptoms.

In sum, because the bulk of the credibility findings are not supported by substantial evidence, the court concludes that the ALJ failed to provide specific, clear and convincing reasons to reject plaintiff's subjective symptom testimony; the ALJ has erred.

**(3) Remand.** The courts remands this case for further proceedings because there are "outstanding issues that must be resolved before a disability determination can be made." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) (concluding that district court must "assess whether there are outstanding issues requiring resolution" before considering whether to credit the claimant's testimony as true). The ALJ erred in evaluating plaintiff's subjective symptom testimony and that error may have influenced the remaining steps; issues concerning the ultimate determination of plaintiff's disability remain unresolved. *Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) ("Remand for further proceedings is proper because outstanding issues in the record remain that must be resolved before a determination of disability can be made[.]") The errors here are not "inconsequential to the ultimate nondisability determination." *Treichler*, 775 F.3d at 1099.

On remand, the ALJ will reevaluate plaintiff's alleged symptoms and incorporate that testimony into the RFC or provide clear and convincing reasons why that testimony is rejected. The ALJ should also take into consideration plaintiff's significant barriers to treatment and continue with the sequential evaluation and offer her an opportunity for a new hearing. As warranted, the ALJ will reevaluate plaintiff's RFC, obtain any supplemental vocational expert evidence, and conduct any other reasonable measures necessary. *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (stating that remand is appropriate where "additional proceedings can remedy defects in the original administrative proceeding").

## CONCLUSION

For the above reasons, the court REVERSES the Commissioner's final decision and

REMANDS this case for further administrative proceedings.

ORDERED: April 20, 2026.

_____
JEFF ARMISTEAD
United States Magistrate Judge